UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL F. MORRISON,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
        _____/

Case No. 11-13974

District Judge Gerald E. Rosen

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Plaintiff Daniel F. Morrison brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #16] be GRANTED and Plaintiff's Motion for Summary Judgment [Doc. #11] be DENIED.

**I.   PROCEDURAL HISTORY**

Plaintiff applied for DIB on May 3, 2002, alleging disability as of October 8, 2001 (Tr. 63-65). Upon denial of the claim, Plaintiff requested an administrative hearing, held on November 3, 2003 (Tr. 260-82). On January 16, 2004, Administrative Law Judge

("ALJ") Jerome B. Blum found Plaintiff not disabled (Tr. 202-203).

On September 27, 2004 the Appeals Council remanded the case for further hearing, finding that ALJ Blum failed to (1) fully articulate Plaintiff's manipulative limitations, (2) discuss consultative medical source findings, and (3) resolve conflicts between the vocational expert's ("VE's") testimony and the information found in the DOT pursuant to SSR 00-4p (Tr. 208-209). Upon remand, the ALJ was also directed to obtain updated medical records, and if necessary, order a consultive examination (Tr. 201).

On July 18, 2005, ALJ Blum held a second hearing (Tr. 421). Plaintiff, represented by Mikel Lupisella, testified (424-439), as did VE Christian R. Barrett (Tr. 439-446). On October 21, 2005, ALJ Blum again found that Plaintiff was not disabled (Tr. 23-24). On July 31, 2007, the Appeals Council denied review (Tr. 7-9). Plaintiff filed suit in this Court on September 27, 2007. Case No. 07-14107. On October 28, 2008, the Honorable Victoria A. Roberts, adopting the Report and Recommendation of Magistrate Judge Mona K. Majzoub, remanded the case to the administrative level for additional vocational testimony. *Id.*, *Docket #12*.

On November 10, 2009, ALJ Henry Perez, Jr. held an administrative hearing at which VE James M. Fuller testified (Tr. 452-457). On December 15, 2009, ALJ Perez found that Plaintiff was not disabled (Tr. 373-374). On July 8, 2011, the Appeals Council denied review of the claim (Tr. 307-309). Plaintiff filed the present action on September 12, 2011.

## II. BACKGROUND FACTS

Plaintiff, born March 15, 1959, was 50 at the time of the administrative decision (Tr. 63, 374). He completed highschool and one year of college (Tr. 75). He worked previously as an assembly line worker and press operator (Tr. 70). His application for benefits alleges disability as a result of right-sided lateral epicondilitis, tendinitis, and bilateral Carpal Tunnel Syndrome ("CTS") (Tr. 69).

### A. Plaintiff's Testimony

#### 1. November 3, 2003 Hearing

Plaintiff testified that he had not worked since October 8, 2001 and was currently on a total and permanent disability pension, effective October 15, 2002 (Tr. 264). Plaintiff reported that he was right-handed (Tr. 265). He indicated that he was unable to keep up with his former work because of severe right elbow pain (Tr. 266). He stated that he took Paxil as well as medicine for hypertension and a cholesterol lowering drug (Tr. 266).

Plaintiff testified that he lived in a two story home with his family (Tr. 265, 267). He stated that he performed yard and house work with the help of his family; attended church once or twice a month; and grocery shopped (Tr. 267-268). He indicated that he was unable to perform yard work for more than 25 minutes before requiring a break (Tr. 268). He denied the need for daily naps (Tr. 268). Plaintiff alleged that left hip problems prevented him from sitting for more than 40 minutes (Tr. 269). He denied standing limitations (Tr. 269). He stated that he could lift a gallon of milk with either hand, but that right hand problems prevented him from carrying the milk for more than a brief period (Tr. 269). He denied

problems bending or squatting, but added that he became light-headed when arising from a squatting position (Tr. 270). He reported right arm limitations in pushing/pulling, overhead reaching, and opening jars (Tr. 270). He indicated that he drove his children to school on a daily basis and was capable of driving up to 10 to 12 miles without difficulty (Tr. 271).

In response to questioning by his attorney, Plaintiff stated that he stood 5' 11" and weighed 278 pounds (Tr. 272). He acknowledged that medical sources had advised him to lose weight (Tr. 272). He reported that he had received "numerous" steroid injections for hand, wrist, and elbow problems, but that his conditions did not warrant surgery (Tr. 273). He alleged that he did not receive long-term relief from pain pills, anti-inflammatory agents, or physical therapy (Tr. 274). He denied the ability to perform any work requiring fine manipulations (Tr. 275). He alleged lightheadedness from his cholesterol and/or hypertension medication (Tr. 275).

### 2. July 18, 2005 Hearing

Plaintiff alleged that his hand, wrist, and elbow problems had not improved since the earlier hearing, but that since February, 2004, right heel spurs limited his ability to stand to 40 minutes (Tr. 425). He stated that foot problems required him to stay in bed for an additional hour every morning (Tr. 425). He alleged difficulty climbing stairs (Tr. 426). He testified that neither cortisone shots nor steroid injections helped his foot condition (Tr. 428). He stated that foot surgery had been postponed due to high blood pressure concerns (Tr. 426). He denied any surgery since the first hearing (Tr. 426).

Plaintiff opined that he would be unable to perform work limiting him to lifting 10

pounds and sitting for most of the workday because of grip strength problems (Tr. 430). Plaintiff admitted that he continued to drive (Tr. 432). He stated that he was able to shave and write with his right hand, but added that he was not able to write for more than 15 minutes (Tr. 434). Plaintiff stated that he was "scared of surgery" (Tr. 437). He reiterated that foot surgery had been contemplated, then canceled because of hypertension (Tr. 438). He admitted that he no longer took high blood pressure medication, despite the fact that he currently received health insurance benefits (Tr. 438).

### 3. November 10, 2009 Hearing

Plaintiff denied any change in his condition since the previous hearing (Tr. 451).

### B. Medical Records[1]

#### 1. Treating Sources

In May, 1996, Plaintiff sought treatment for left elbow pain (Tr. 107-108). Neil A. Friedman, M.D., making a diagnosis of left lateral epicondylitis, recommended conservative treatment, included nonsteroidal anti-inflammatory drugs ("NSAIDS") and physical therapy (Tr. 108).

In October, 2001, Plaintiff reported pain in both wrists (Tr. 120). He was diagnosed with tendinitis of both wrists and the right elbow (Tr. 119). A February, 2002 MRI of the

---

[1]Medical records created prior to the alleged onset date of May 3, 2002 and after Plaintiff's date last insured for DIB eligibility of December 31, 2007 are included for background purposes only.

right wrist showed the presence of chronic ligament strain and inflammation (Tr. 130-131). The same month, Plaintiff also complained of left wrist pain (Tr. 143). The following month, Plaintiff reported minimal relief from steroid injections (Tr. 137). In April, 2002, Dr. Thomas Magnell noted motion restrictions in the right wrist but no other abnormalities (Tr. 133). He found no evidence of median nerve compression (Tr. 134). The following month, Parveen Qazi, M.D. found the presence of CTS, bilateral tendinitis of the wrists, and right lateral epicondylitis (Tr. 135).

In January, 2004, Dr. Qazi recommended that Plaintiff proceed with hand surgery (Tr. 222, 401). In March, 2004, treating notes by Brian Kolender, M.D. state that Plaintiff was feeling well but continued to experienced inflammatory arthritis of the hands and bilateral CTS (Tr. 254). Dr. Kolender found that the wrist condition was stable (Tr. 254, 355). Treating notes also show the presence of elevated cholesterol levels (Tr. 254). January, 2005 treating notes by Gary A. Wasiak, D.P.M. state that Plaintiff was denied clearance for right heel spur surgery because of hypertension (Tr. 217, 357). May, 2006 imaging studies showed a bone spur on the right elbow and lateral epicondylitis (Tr. 405). In June, 2006, Dr. Qazi diagnosed Plaintiff with "possible ulnar neuropathy" but observed 85 percent right hand grip strength and 90 percent on the left (Tr. 328). Dr. Qazi's October, 2006 treating notes state that Plaintiff complained of hand numbness, but noted good grip strength on both sides (Tr. 396). In April, 2008, Dr. Qazi noted that Plaintiff had not been examined in approximately 18 months (Tr. 326, 394). April, 2009 treating notes state that Plaintiff continued to experience bilateral CTS but exhibited 90 percent right hand grip strength (Tr.

324, 391). In October, 2010, a bone scan of the hands and wrists was unremarkable (Tr. 403).

## 2. Non-Treating Sources

In June, 2002, a non-examining Physical Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitations in the lower extremities (Tr. 100). Plaintiff's ability to push and pull in the lower extremities was deemed limited by bilateral CTS (Tr. 100). He was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 101). Plaintiff was limited to less than frequent handling and fingering on the right side (Tr. 102). His environmental limitations consisted of the need for an avoidance of concentrated exposure to vibration (Tr. 103).

In March, 2005, Elizabeth W. Edmond, M.D. performed a consultive examination of Plaintiff on behalf of the SSA (Tr. 223-224). She noted a recent diagnosis of a right heel spur, but observed a normal gait pattern (Tr. 225). Plaintiff stated that he was independent in all self care activity (Tr. 225). He demonstrated a full range of shoulder, elbow, wrist, hip, knee, and ankle motion (Tr. 225, 227-228). Dr. Edmond found that Plaintiff did not require an ambulatory aid (Tr. 225).

Dr. Edmond also completed a physical functional assessment of Plaintiff's work-related abilities, finding that he was limited to lifting less than 10 pounds on an occasional basis, but no limitations in standing or walking (Tr. 230). She found no limitations in sitting

but found that Plaintiff's ability to push or pull in the upper extremities was restricted by the arm conditions (Tr. 231). Dr. Edmond found that Plaintiff should be precluded from all climbing and balancing, but could kneel, crouch, or crawl on an occasional basis (Tr. 231). She found that he could stoop frequently (Tr. 231). As to manipulative limitations, she limited Plaintiff to occasional handling and fingering and frequent reaching (Tr. 232). She found no limitations in feeling (Tr. 232). Dr. Edmond also found that Plaintiff's exposure to vibration and hazards should be restricted (Tr. 233). Dr. Edmond concluded her assessment by noting the "paucity of clinical findings," but stated that her finding of limitations would "avoid aggravation of [the] underlying pathology" (Tr. 233).

### C. VE Testimony - November 10, 2009[2]

VE James M. Fuller classified Plaintiff's former jobs as an assembler and press operator as unskilled at the medium exertional level[3] (Tr. 453). Taking into account

---

[2] The November 10, 2009 VE testimony, ordered by the District Court on October 28, 2008, supercedes the prior vocational testimony. As such, I will omit discussion of the earlier testimony.

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

Plaintiff's age, education, and work experience, the ALJ then posed the following hypothetical question to the VE:

> [A]ssume that such a person has exertional limitation of lifting 20 pounds occasionally, 10 pounds frequently. We impose further limitations of standing, sitting, walking six hours. Occasional handling, fingering with the right hand. Limited hand controls with the right upper extremity. Occasional climbing, balancing, stooping, crouching, kneeling, crawling. Jobs that'll avoid concentrated exposure to vibrations. And putting this individual at the unskilled level, could such a person be expected to perform claimant's past relevant work? (Tr. 453).

The VE responded that given the hypothetical limitations, the individual would be unable to perform Plaintiff's past relevant work but could perform the light, unskilled work of a cashier (6,000 positions in the local economy, DOT code 211.462-010); inspector (2,000, DOT code 559.687-074); and parking lot attendant/parking lot signaler (3,000, DOT code 915.473-010; 915.667-014) (Tr. 454, 456-457).

The VE testified further that if the same individual were limited to "lifting five pounds occasionally with occasional fine and gross manipulation of the upper extremities," the individual could work as a surveillance system monitor (3,000, DOT code 379.367-010) and information clerk (2,000, DOT code 237.367-018) (Tr. 455, 457). The VE testified that the above-stated job numbers would be doubled to reflect existing positions in the entire State of Michigan (Tr. 455). The VE stated that his testimony was consistent with the information found in the DOT code (Tr. 455). In response to questioning by Plaintiff's attorney, the VE stated that the need to lie down at unpredictable times would preclude all gainful employment (Tr. 456).

### D. ALJ Perez's December 15, 2009 Decision

ALJ Perez determined that Plaintiff remained eligible for DIB only through December 31, 2007 (Tr. 368). Citing the medical records, the ALJ found that the severe impairments of "hypertension, hyperlipidemia, hypertriglyceridemia, diabetes, tendonitis of the right wrist, epicondylitis of the [r]ight elbow, bilateral carpal tunnel syndrome, and a right heel spur," but found that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 370). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> [L]ifting no more than five pounds occasionally; as well as only occasional fine manipulation and gross manipulation of the upper extremities. Mentally, Claimant can perform the tasks of the unskilled work as he can understand, remember and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting (Tr. 370).

Citing the VE's testimony, the ALJ determined that although Plaintiff was unable to perform his past relevant work, he could work as a surveillance system monitor or information clerk (Tr. 373).

The ALJ rejected Plaintiff's allegation that he required daily naps, noting that Plaintiff previously stated that he "'very seldom'" napped during the day (Tr. 371 *citing* Tr. 90). ALJ Perez, incorporating ALJ Blum's October 21, 2005 discussion of the medical records (Tr. 20-22), noted that "office visit notes of record do not specify any particular complaint relating to a need to nap" (Tr. 371).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

**The Vocational Expert's Testimony Constitutes Substantial Evidence**

Plaintiff argues that the hypothetical question posed to the VE at the November 10, 2009 hearing did not include all of his relevant limitations. *Plaintiff's Brief* at 7-9, *Docket #11*. However, he does not identify any specific deficiencies in the ALJ's question to the VE. Issues raised "'in a perfunctory manner, unaccompanied by some effort at developed argumentation" are deemed waived.'" *Clemente v. Vaslo,* 679 F.3d 482, 497 (6th Cir. 2012)(citing *Langley v. DaimlerChrysler Corp.,* 502 F.3d 475, 483 (6th Cir.2007)). Although the November 10, 2009 hearing was held in response to Judge Roberts' order requiring additional vocational testimony, Plaintiff does not argue that the latest hearing was non-compliant with the order to provide DOT codes for the job findings and requiring the ALJ to ask the VE whether the job testimony conflicted with the information provided in the DOT. Case No. 07-14107, *Docket #12*.

Further, the ALJ's choice of hypothetical limitations appear to have been drawn directly from the March, 2005 assessment by consultive examiner Dr. Edmond (Tr. 230-233, 453-454). The hypothetical limitations are thus supported by substantial evidence. Significantly, none of Plaintiff's treating sources found a greater a degree of limitation than that found by Dr. Edmond. Plaintiff's original testimony that he could perform a wide range of activities such as yard work, grocery shopping, and driving despite upper extremity limitations further supports the ALJ's hypothetical question and RFC (Tr. 267-268, 270-271). Plaintiff's July 18, 2005 testimony that a right heel spur severely restricted his mobility is

undermined by his failure to take readily accessible hypertension drugs needed to obtain clearance for the foot surgery (Tr. 426, 438).

Plaintiff also asserts that the VE provided erroneous job testimony. *Plaintiff's Brief* at 9-10. However, this argument is wholly discredited by the fact that Plaintiff cites the VE's testimony from the July 18, 2005 hearing rather than the most recent hearing held on November 10, 2009.[4]  For example, while Plaintiff argues that he is unable to perform the jobs of gate keeper and badge checker, the VE at the 2009 hearing did not include those positions among his job findings (Tr. 454-455). While Plaintiff argues that the position of information clerk (a job cited at both the July 18, 2005 and November 10, 2009 hearings) is not an unskilled position, the DOT listing cited for information clerk at the most recent hearing has a Specific Vocational Preparation ("SVP") level of 2, denoting  unskilled work. DOT code 237.367-018; SSR 00-4p.[5]  Likewise, the position of surveillance system monitor,

---

[4]Plaintiff's counsel also refers to his client repeatedly as "Mr. Cantrell."  *Plaintiff's Brief* at 6-7.

[5]

I note that the listing for information clerk, cited by the VE as DOT code 237.367-018, describes work that is exertionally *light*, rather than sedentary.  It is possible that the VE found that a reduced range of positions existing within this job listing that corresponded to the hypothetical question.  However, assuming at worst that the VE testified incorrectly that information clerk job was sedentary, the error is harmless, given his additional testimony that 2,000 surveillance system monitor jobs (sedentary, unskilled) existed in the local economy.  Those 2,000 jobs, standing alone, constitute a "significant" number.  *See Born v. Secretary of Health & Human Services,* 923 F.2d 1168, 1174  (6th Cir. 1990)*, citing Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988))(1,350 jobs in the local economy constitute a significant number); *see also Martin v. Commissioner of Social Security,* 170 Fed.Appx. 369, 375, 2006 WL 509393, *5 (6th Cir. March 1, 2006)(870 jobs in the claimant's geographic region a significant number).

listed as sedentary, has an SVP of 2.  DOT code 379.367-010.

In closing, it must be noted that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's physical limitations.  However, substantial evidence and even a preponderance of evidence supports the ALJ's December 15, 2009 decision.  Because the ALJ's determination is generously within the "zone of choice" accorded to the fact-finder at the administrative hearing level it should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Doc. #16] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #11] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: January 14, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 14, 2013.

s/Johnetta M. Curry-Williams
Case Manager

-16-